Filed Jan. 5, 1887.

---

No. 11,640.

## HANLON v. DOHERTY ET AL.

MORTGAGE.— *When Deed Is.*—Although a deed is absolute on its face, it is only a mortgage if executed to secure an existing debt.

SAME. —*Release.*— *Consideration.* —*Evidence.*—A release may be shown to be without consideration.

SAME.—*Equity.*—*Merger.*—*Extinguishment.*—*Deed.*—Where the holder of a purchase-money mortgage, after a second mortgage upon the land has been executed to a third person, extends the time of payment of the amount due on his mortgage, and as a security accepts a deed to the land absolute on its face, and subsequently, without consideration and

Hanlon *v.* Doherty *et al.*

with no intention of releasing his lien, releases his mortgage of record, such mortgage will be kept alive in order that he may not lose the priority of his lien.

SAME.—*Uniting of Two Estates in Mortgagee.*—*When Mortgage not Merged.*—Even when the fee in the mortgaged property has been vested in the mortgagee by a conveyance from the mortgagor, and the mortgage has been released, it will still be upheld whenever it is for the interest of the mortgagee, by reason of some intervening title or other cause, that it should not be regarded as merged.

EVIDENCE.—*Privileged Communications.*—*Attorney.*—*Scrivener.*—Communications made to an attorney who is acting for both parties, and which are made in the presence of both, are not privileged, nor are communications made to an attorney acting as a scrivener.

SAME.—*Witness.*—*Action by Executrix.*—In an action by an executrix upon a contract made with her testator by the defendant, the latter is not a competent witness.

SAME.—*Exclusion.*—*Harmless Error.*—The exclusion of competent evidence is a harmless error where the result must have been the same had it been admitted.

From the Floyd Circuit Court.

*D. C. Anthony, J. V. Kelso* and *F. T. Hord,* for appellant.
*J. H. Stotsenburg* and *A. Dowling,* for appellees.

ELLIOTT, C. J.—The complaint of the appellant is founded on a note executed by John Doherty to him, and the mortgage given to secure it, executed by Doherty and wife on the 8th day of December, 1875. Among others who were made parties to answer as to their interests in the land was Elizabeth Humphreys, executrix of the will of Thomas Humphreys, deceased. She appeared and filed an answer and cross complaint, but we need not further refer to her answer, as the questions made on the pleadings are confined to the cross complaint.

It is a familiar rule of equity, that a deed, although absolute on its face, is nothing more than a mortgage when executed to secure an existing debt. No matter what form the transaction may assume, if it appears that the instrument was executed to secure a subsisting debt, it will be adjudged a mortgage. The controlling element is the existence of the

debt and the execution of an instrument to secure it. This elementary doctrine disposes of the objection suggested, rather than urged, against the second paragraph of the cross complaint.

The third paragraph of the cross complaint contains these material allegations: That, on the 7th day of July, 1873, Doherty and his wife executed to George Phelps a mortgage on part of the land described in the appellant's complaint, to secure the payment of the purchase-money; that on the following day this mortgage was recorded; that it was subsequently assigned to Thomas Humphreys; that after the assignment of the mortgage, on the 7th day of March, 1878, Doherty entered into an agreement with Humphreys, wherein an extension of time for the payment of the debt secured by the mortgage was granted, and pursuant to the agreement Doherty and wife executed to Humphreys a deed, absolute on its face, to secure the amount due on the purchase-money mortgage; that, after the execution of this deed, Humphreys, without intending to release his lien for the purchase-money, and without having received any consideration, entered a release of the purchase-money mortgage on the records of Floyd county; that appellant's mortgage was not executed for purchase-money, and was not executed until after the purchase-money mortgage was executed and recorded.

The argument of appellant that a release may not be shown to have been executed without consideration can not prevail. A release, like any other contract, may be shown to lack the essential element of consideration.

The difficult question is as to the effect of the transaction of March 7th, 1878, upon the rights of the appellant under his mortgage executed in December, 1875. The mortgage executed to Phelps in July, 1873, was for the purchase-money of the land, and, both in equity and in priority of time, was the superior lien. If the transaction of March, 1878, did not destroy this superiority, it must prevail over the lien of the appellant's mortgage. If the appellant had taken his

mortgage upon the faith of the release entered of record, we think his rights would be paramount; but this he did not do, for he accepted his mortgage in 1875, when the record showed the purchase-money mortgage to be in full force. No injustice is, therefore, done him by continuing the lien of that mortgage. He is not prejudiced by continuing that lien in force, for he had constructive notice when he took his mortgage, that it was subordinate to the mortgage executed for the purchase-money. The holder of the purchase-money mortgage, on the other hand, would lose the priority of his lien if it should be held that his mortgage was extinguished by the transaction of March, 1878. We think it the duty of the court to avert this unjust result, and we have no doubt that it can be done by the application of the familiar rule of equity that courts will keep alive an encumbrance when equity requires it, and it was not the intention of the parties that the encumbrance should be extinguished. The rule of which we are speaking was thus stated in *Lowrey* v. *Byers*, 80 Ind. 443: " It is an elementary rule that equity will consider an encumbrance as in force if the ends of justice can be thereby attained."

In another case it was said: " When a new mortgage is substituted in ignorance of an intervening lien, the mortgage released through mistake may be restored in equity, and given its original priority as a lien, where the rights of innocent third parties will not be affected." *Sidener* v. *Pavey*, 77 Ind. 241, see p. 246.

Mr. Pomeroy, in speaking of a lien that will be kept alive, says: " If there is no reason for keeping it alive, then equity will, in the absence of any declaration of his intention, destroy it; but if there is any reason for keeping it alive, such as the existence of another encumbrance, equity will not destroy it." Pomeroy Eq. Juris., section 791. This general principle has very often been recognized and enforced by this court. *Howe* v. *Woodruff*, 12 Ind. 214; *Troost* v. *Davis*, 31 Ind. 34; *Smith* v. *Ostermeyer*, 68 Ind. 432 ; *Haggerty* v.

Hanlon *v.* Doherty *et al.*

*Byrne,* 75 Ind. 499; *Hewitt* v. *Powers,* 84 Ind. 295; *Mc-Clain* v. *Sullivan,* 85 Ind. 174; *Elston* v. *Castor,* 101 Ind. 426 (51 Am. R. 754), see p. 443. In the case before us we have both the equity and the intention existing in favor of the appellee.

The case of *Harris* v. *Boone,* 69 Ind. 300, cited by the appellant, is strongly against him upon the point that a release executed without consideration is ineffective, nor does it decide that a release without consideration is only invalid as between the parties. We suppose that if the appellant had in good faith acquired rights upon the faith of the release, then the fact that it was without consideration would not defeat those rights; but here the appellant did not act upon the release at all.

The case of *Millspaugh* v. *McBride,* 7 Paige, 509, is only relevant to this controversy for the reason that it declares the general doctrine that equity will keep an encumbrance alive to subserve the purposes of justice. It does not, even by the remotest implication, sustain the position of counsel, that as no notice was given to appellant of the transaction of March 7th, 1878, his lien became the paramount one.

The appellant offered to prove by Mr. James V. Kelso, that at the time he was called upon by Thomas Humphreys and John Doherty to draw the deed executed by Doherty and wife to Humphreys, it was agreed that the deed should be absolute for the property in controversy; that Humphreys said that he intended to resell the property; that both Humphreys and Doherty were present and assented to the arrangement; "that the papers were drawn according to their instructions, and the deed and bond were executed independent of each other."

Before the offer was made Mr. Kelso testified as follows: "On the 20th day of April, when I took the acknowledgment of the chattel mortgage, I was an attorney at law, actively engaged in the practice of law, and had been for several years, having my office in the Hedden building. I was

at the time acting in reference to that paper, as agent, so far as writing mortgage, for one, or I presume both of the parties. I had nothing more to do with it, than writing the mortgage, and wrote what they agreed upon. The understanding was that the mortgage was to secure rent of the place Doherty had conveyed to Humphreys. The deed from Doherty and wife was made in my office in the Hedden building. When it was written Mr. Doherty and Mr. Humphreys only were present. I took the acknowledgment. I think Humphreys came in first; then Doherty came, but I am not certain who came in first. I was acting simply as a notary public then. I had done no business for Mr. Humphreys before. I may have attended to some business for Mr. Doherty, but I do not remember now of having done so. Doherty signed the deed at my office, and then we went down to his home and his wife signed it, and it was then handed to Mr. Humphreys. The whole transaction was closed in my office. The title bond was drawn by me the same day the deed was made. I am not sure, but I think I drew the deed first and the bond afterwards. I went with Doherty to his house to have the deed executed by his wife. I think I prepared both papers before I went to Doherty's. We met again at my office after dinner, and then the bond was signed. I wrote both papers under the instructions of Mr. Humphreys. He paid me for both of them I think, but I am not certain. Mr. Humphreys never gave me any employment as an attorney. He told me what he wanted done. They talked to me fully about the matter. I was a friend to Mr. Hanlon, but not his attorney. I had sued both him and Doherty before that. I had not been the attorney for Doherty. I wrote the papers with the best skill I had as a lawyer. I was not the attorney of Hanlon, Doherty or Humphreys before that. I think it was the first time Humphreys had ever been in my office. He came and inquired for Doherty, said Doherty was to meet him there for the purpose of making a deed. They both asked my opinion

as to how to arrange the papers, and the nature of the business was fully explained to me, and I fully understood their business."

The offered evidence can not be pronounced incompetent on the ground that the communication to the witness was a privileged one. The general rule is, that communications between attorney and client are privileged when they are confidential; but, where both parties are present, the communications can not be regarded as confidential. It is obvious that where both parties are present the general rule can not apply, for the element which gives vitality to the rule does not exist. The authorities are abundant and harmonious upon this question, for it is agreed on every hand that communications made to one who is acting for both parties are competent and can not be considered as privileged. *Weeks* v. *Argent*, 16 M. & W. 817; *Dunn* v. *Amos*, 14 Wis. 106; *Mobile, etc., R. W. Co.* v. *Yeates*, 67 Ala. 164; *Gulick* v. *Gulick*, 39 N. J. Eq. 516; *Whiting* v. *Barney*, 30 N. Y. 330; *Hebbard* v. *Haughian*, 70 N. Y. 54; *Sherman* v. *Scott*, 27 Hun, 331; 1 Wharton Ev., section 587.

There is another ground upon which the competency of this evidence may be securely placed, and that is this: The capacity in which Mr. Kelso acted was that of scrivener, and not that of an attorney, and the communications to him can not, under the rule declared in *Borum* v. *Fouts*, 15 Ind. 50, be deemed privileged. It was said in that case: "But such communications, in order to be privileged, must be addressed to an attorney in his professional character of a legal adviser, with a view to legal advice which, as an attorney, it was his duty to give."

While we regard the exclusion of this evidence, on the ground that the communication to Kelso was a privileged one, as erroneous, still, we think the error a harmless one, for, upon the controlling facts, the result must have been the same had this evidence been admitted. What was said by the parties can not make the transaction other than a mort-

gage, for, where a debt exists that is not extinguished by the conveyance of the property, the transaction is nothing more than a mortgage. That the pre-existing debt still remained undischarged is evident from the facts and from the written instruments executed by the parties, and Kelso's testimony in no material particular tended to prove the contrary. It was of little importance that Humphreys, in terms, denominated the transaction a sale, for its character is to be determined from its substance, not from the mere name given it by one or both of the parties. The transaction constituted a mortgage, and " once a mortgage always a mortgage."

If we should concede that there was a sale, and certainly Mr. Kelso's testimony tended to prove no more than this, still, the result reached must be the same, for the lien of the first mortgage would not have been merged. This principle is asserted in the cases we have cited, and is thus stated by Mr. Jones: " Even when the parties have undertaken to discharge the mortgage upon the uniting of the estates of the mortgagor and mortgagee in the latter, it will still be upheld as a source of title whenever it is for his interest, by reason of some intervening title or other cause, that it should not be regarded as merged. It is presumed, as matter of law, that the party must have intended to keep on foot his mortgage title, when it was essential to his security against an intervening title, or for other purposes of security; and this presumption applies, although the parties through ignorance of such intervening title, or through inadvertence, have actually discharged the mortgage and cancelled the notes." 1 Jones Mortg., section 873.

Many courts have enforced this equitable principle. *Lowman* v. *Lowman*, 9 N. E. Rep. 245; *Smith* v. *Swan*, 29 N. W. Rep. 402; *Edgerton* v. *Young*, 43 Ill. 464; *Young* v. *Hill*, 31 N. J. Eq. 429; *Stantons* v. *Thompson*, 49 N. H. 272; *Hatch* v. *Kimball*, 16 Maine, 146; *Clift* v. *White*, 12 N. Y. 519; *Forbes* v. *Moffatt*, 18 Ves. 384.

In this case, the equities are stronger than in most of the

cases cited, for here the purchase-money was not paid, the mortgagor conveyed to the mortgagee, and received a written defeasance, but the amount of the debt was not reduced, nor was there any change except in the form of the evidence and the security. It would be a palpable perversion of justice to permit an intervening mortgage to creep in and deprive the holder of the purchase-money mortgage of his lien, and there is no principle of law or equity that will justify such a course.

We think that Doherty was not a competent witness under the provisions of the statute, as the suit was by the executrix upon a contract made with her testator. If, however, it were conceded that he was competent, his testimony could not have affected the result, for, upon the principle of equity stated in discussing Kelso's testimony, the judgment must have been for the appellee, even if Doherty had testified that he sold the property to Humphreys.

In discussing the evidence, the appellant's counsel cite authorities upon the rights of *bona fide* purchasers, but it is unnecessary to consider them in detail, for they have no relevancy here. It is no doubt true that the appellant is entitled to protection, but he is not entitled to protection beyond the priority which his mortgage had at the time it was executed, and that would not make it paramount to the mortgage executed to secure the purchase-money. In giving effect to the lien of the purchase-money money mortgage, his lien is not displaced; it remains as it was when he accepted his mortgage. All that is done by the application of the principle which rules this case is not to displace a junior lien, but to preserve the senior one. In permitting, as the principle does, the junior lien to keep its rank and priority, the holder of it gets what he expected, and all he expected, at the time he acquired his lien.

It was not necessary for the appellee to prove that the entry of satisfaction was made by mistake, for merger in such cases as this does not take away the first lien, even though all

the evidences of the debt were purposely destroyed, but leaves it intact as against intervening mortgages.    1 Jones Mortg., section 773, and cases cited in note.

If the appellant had taken his mortgage after the entry of satisfaction, and on the faith that the senior mortgage had been discharged, then counsel's argument would be valid; but, as applied to the actual case, it is without force.    The principle of equity which governs this case is strongly illustrated by the case of *Barnes* v. *Mott*, 64 N. Y. 397 (21 Am. R. 625), in which it was held, that, even as against sureties, a purchaser of land who had paid off a mortgage in ignorance of a lien held by the sureties, was entitled to have the mortgage reinstated and foreclosed.

The record before us presents a much stronger case for the application of the rule, for here the mortgagee was in one instant the holder of the mortgage lien, and in the next the owner of the fee, and there was no interval in which a junior lien could have crept in, so as to displace his superior equity. It would be as unnatural as unjust to presume that Humphreys took an absolute title at the expense of his lien for the purchase-money; while, on the other hand, it is the most natural and reasonable of presumptions that he did not intend to lose the priority secured to him by his purchase-money mortgage.    This is a reasonable presumption, and it is a just one, for it produces an equitable result that must commend itself to the approval of conscientious men.

Judgment affirmed.

HOWK, J., was not present when this case was considered. Filed Jan. 7, 1887.