RAILROADMEN'S BUILDING AND SAVINGS ASSOCIATION
*v.* RIFNER.

[No. 12,878. Filed October 11, 1928. Rehearing denied February 15, 1929.]

*Elias J. Jacoby, Joseph B. Kealing* and *Martin M. Hugg,* for appellant.

*Manifold & O'Harra,* for appellee.

NICHOLS, J.—Action by appellee against Edgar B. Sprague, Zipporah Sprague, his wife, appellant and Fred G. Appel, receiver, to enforce specific performance of a contract executed August 15, 1920, by Edgar B. Sprague, his wife not joining him, with appellee, whereby Sprague agreed to convey to appellee, free and clear of incumbrances, certain real estate in the city of Indianapolis, for $2,200, payable in installments, $350 cash and the

remainder at $18.50 per month until the full purchase price and interest were fully paid. Appellee went into possession of said real estate at once, and thereafter continued to reside thereon, and was in open and notorious possession thereof under claim of ownership at the time of the execution of the mortgage to appellant hereinafter mentioned, at said time and thereafter making his payments of the purchase price as provided in his contract of purchase. The contract was read in evidence. Prior to the execution of said contract, the Spragues had executed their mortgage to the Fidelity Trust Company, to secure a loan of $800. This mortgage was executed January 6, 1917, and recorded January 8, 1917. After Edgar B. Sprague and appellee had executed their contract, Sprague applied to appellant for a loan of $1,200, to be secured by a mortgage on said real estate and furnished it with an abstract of title thereto. The trust company was at this time threatening to foreclose its mortgage. This abstract showed the real estate in Edgar B. Sprague's name and clear of incumbrances except current taxes and the trust company mortgage. As an inducement to appellant to make the loan, Sprague made an affidavit that he was the absolute owner in fee simple of said real estate and that it was free of incumbrances except taxes and said mortgage; that there was no unrecorded conveyance, lease or incumbrance of any kind, made or suffered by him or any other person that might in any way affect the title of affiant to said real estate; and that the money to be procured on the loan was to be used in the satisfaction of said trust company mortgage and for his own use. Counsel for appellant approved the title, and appellant, relying upon the abstract and said affidavit, on September 9, 1920, loaned $1,200 to the Spragues, evidenced by their note and secured by their mortgage upon said real estate, and thereupon, $700, the amount owing upon the mortgage of

said trust company, was paid to said company, and its mortgage was released, and the remainder, $500, was paid to Edgar B. Sprague. This transaction was wholly without the knowledge and consent of appellee. The Spragues made default in their said mortgage and, on June 17, 1924, appellant brought its action in the Marion Circuit Court against the Spragues to foreclose its mortgage. Appellee was not made a party thereto. On June 30, 1924, judgment was rendered against the Spragues for $1,252.48 and $75 attorney's fees, and a decree of foreclosure entered. The real estate was sold under this decree on August 4, 1924 for $1,384.30, and, not having been redeemed from the sale, the sheriff, on August 4, 1925, executed his deed for said real estate to appellant. This deed was then recorded.

In said proceedings to foreclose said mortgage, Fred G. Appel was appointed receiver to collect the rents and profits. He called upon the wife of appellee in June, 1924, at their home, and demanded rent for the premises and told her of appellant's mortgage, of which appellee then first learned. Mrs. Rifner and appellee then went to see Edgar B. Sprague, and he admitted to them that he had executed the mortgage, but said that he would pay it off and for them to continue making their payments to him. Appel had told Mrs. Rifner to see a lawyer, and she and appellee so told Sprague, but he told them not to do so, and she and appellee followed his advice. Appellee made no payments to the receiver and continued to make payments of $10 each to Edgar B. Sprague until they amounted to $110. The court found that there was, aside from the $110, the sum of $297.29 owing by appellee upon the purchase price of said real estate.

After trial, the court decreed that said Edgar B. Sprague should execute his warranty deed to appellee for said real estate free and clear of all incumbrances as

provided in his contract, and that, upon the execution of said deed, appellee should pay to the clerk of the court the remainder owing by him on the purchase price, and quieted appellee's title to said real estate against appellant and other defendants below as against all rights and title claimed by Edgar B. Sprague.

From this judgment, this appeal is prosecuted, appellant assigning that the court erred in overruling its motion for a new trial, under which it presents that the decision of the court is not sustained by sufficient evidence, that it is contrary to law, and that the assessment of the amount of recovery is erroneous, being too small.

By this action, appellee seeks to enforce a specific performance of his contract for the conveyance of the real estate involved against the Spragues, and to quiet his title against appellant's judgment foreclosing its mortgage upon such real estate, which judgment, and the mortgage upon which it is based, appellee contends is a subsequent incumbrance upon his said real estate and does not affect his rights under his contract. Appellant contends that the court erred in refusing to set aside the release of the trust company's mortgage as against appellee and to subrogate appellant to the trust company's rights thereunder; in holding that appellee made *bona fide* payments of $110 to Edgar B. Sprague after he, appellee, had notice of appellant's mortgage; and in refusing to give appellant relief to which it claims to be entitled as the alleged owner of Mrs. Sprague's interest in such real estate.

In discussing the questions here involved, candor demands that we state that, in our opinion, this suit grows out of the negligent conduct of both appellee and appellant—of appellee in that he failed, we assume, through his ignorance of such transactions and his undue confidence in Edgar B. Sprague, to require an abstract of the title to such real estate and to have it examined by a

competent attorney, or in failing to have a proper examination made of the record as to the title and incumbrances; and, of appellant, in that it failed to take any notice whatever of appellee's open and notorious possession of the real estate at the time that it loaned its money to the Spragues and took a mortgage to secure the same, and that it failed thereafter to take any notice whatever of appellee's continuous possession of such real estate and to make any inquiry as to appellee's rights by which he held such possession.

As was said in *Aetna Life Ins. Co.* v. *Middleport* (1888), 124 U. S. 534, and has been many times stated, in substance, in other cases, in this state as in other jurisdictions, the doctrine of subrogation is a pure unmixed equity, having its foundation in the principles of natural justice, and, in the light of natural justice, under the law as we see it, we shall undertake to decide as to the equities between the parties under the circumstances of this case.

At the time that appellee entered into his contract of purchase with Edgar B. Sprague, the trust company mortgage was then in existence and clearly constituted a paramount claim to the rights of appellee, and to any title to the real estate that he might acquire by virtue of his contract with Edgar B. Sprague. It is true that he did not know of the trust company mortgage, but, notwithstanding this fact, it was a valid lien upon the real estate and prior to any equities that he had therein. As it was not satisfied of record until after he had entered into his contract of purchase, he did not, of course, in any way rely upon such satisfaction when he entered into his contract. He did not at that time change his position as to such real estate because of such satisfaction.

That a fraud was perpetrated upon appellant by Edgar B. Sprague when he made his false affidavit that

the real estate was free of incumbrance except the trust company mortgage, knowing, as he did, that at that time there was an outstanding contract by which he had sold such real estate to appellee, is unquestioned. It was this affidavit, along with the approval of the title as disclosed by the abstract which induced appellant, without taking any notice of appellee's possession, to make its loan of $1,200 which was secured by a mortgage upon the real estate, $700 of which loan was for the purpose of, and was used for, the payment and satisfaction of the trust company mortgage. Under circumstances such as these, we are constrained to hold that appellant was, at the time, or within a reasonable time thereafter, entitled to be subrogated to the rights of the trust company under its said mortgage to the extent of the payment made by appellant in the discharge of such trust company mortgage. This conclusion which we have reached as to the equities between the parties seems to be in harmony, not only with the decisions of the courts of this state but with the courts of other jurisdictions. The rule is thus stated in 41 C. J. 590: "Generally, where the release or satisfaction of a mortgage is the result of fraud, accident, or mistake, it will not inure to the benefit of a person acquiring an interest in the property, who did not rely or advance anything on the faith of such discharge. As the discharge, under such circumstances, did not enter into, or induce the transaction, the annulment thereof and the restoration of the mortgage to its priority of lien does not operate prejudicially or place the person who acquired the interest in a worse condition than he was in before. . . . The foregoing rule particularly applies where the interest acquired was subject to the prior mortgage and anterior to the release. There being no cancellation at the time, no reliance thereon was possible, and, as against such an interest, a senior mortgage will be reinstated and given

priority in lien irrespective of whether the satisfaction was entered without the authority of the owner, or contrary to his instructions, or was induced by fraud, or resulted from accident or mistake."

Numerous authorities are cited to sustain this statement of the law, among which is *Wells* v. *Huffman* (1919), 69 Ind. App. 379, 121 N. E. 840, and *Hanlon* v. *Doherty* (1887), 109 Ind. 37, 9 N. E. 782. In the Wells case, the court holds that, "when a new mortgage is substituted in ignorance of an intervening lien, the mortgage released through mistake may be restored in equity, and given its original priority as a lien, where the rights of innocent third parties will not be affected. In such a case, a subsequent lienholder, whose right existed at the time of such discharge, cannot object to the prior mortgagee being restored to his rights," citing *Sidener* v. *Pavey* (1881), 77 Ind. 241, to sustain the rule stated.

In the Hanlon case, the same general principle was involved, and the court says that all that was done was not to displace a junior lien, but to preserve the senior one; and that, in permitting the junior lien to keep its rank and priority, the holder gets all he expected at the time that he acquired the lien. In the instant case, if appellee did not get all that he expected at the time that he entered into the contract of purchase, it was because he failed to take such steps as would have disclosed the trust company mortgage against which he then could have protected himself.

We hold, therefore, as stated above, that appellant, at the time it was so defrauded, or within a reasonable time thereafter, was entitled to be subrogated to the rights of the trust company mortgage. But, at the time it negotiated its loan to the Spragues, and with a part of the proceeds discharged the trust company mortgage, and thereafter, until June, 1924, for about three years and ten months, appellee was in

open and notorious possession of the real estate, claiming to own it, and making regular payments on the purchase price thereof, of not less than $18.50 a month. At the time of the execution of appellant's mortgage, appellee had paid but $350 on the purchase price, but, at the time that he was notified of the existence of appellant's mortgage and its judgment thereon, he had paid $2,068, and, during all of the time, he was in possession of·the property, and wholly ignorant of the fact that there was any mortgage on his property. The undisputed evidence shows that at the time appellant's mortgage was placed on the property, and of its discharge of the trust company mortgage, that company was threatening the foreclosure of its mortgage. The foreclosure of such mortgage was prevented by appellant's payment of the same. Had there been such foreclosure, it is to be presumed that appellee, being in possession of the property, would have been made a party to such foreclosure suit to answer as to his interest in such real estate, and thereby he would have been apprised of the trust company mortgage at a time when he could have fully protected himself. Appellant's mortgage, being what is commonly known as a "building and loan mortgage," made full provision for the payment of the same in monthly installments, with a provision that, upon default in the payment of the principal sum, dues, interest, fines, taxes, assessments or insurance, all of which were secured by the mortgage, and such default continuing for ninety days, the whole amount thereof should become due and the mortgage might be foreclosed. It was expressly provided in the mortgage that payments should be made thereon at not less than $12 per month. Such continued payments would have substantially reduced the amount due upon appellant's mortgage, but, instead, there had been such default in payment, and for such a length of time, that there was due thereon at the time of foreclosure, June

30, 1924, $1,252.48, not including attorney fees and costs. Thus it appears that after appellant had its right of action by way of foreclosure because of the default of the Spragues in making their payments as required by the terms of the mortgage to appellant, it neglected to take such step, and that while it was guilty of such laches, appellee was continuing in the possession of the real estate and making his payments thereon, and that, during the time of such delay by appellant in commencing its action, appellee must have paid to the Spragues more than enough money to have protected himself fully against any rights of appellant under the trust company mortgage, had he known of the existence thereof, which he would have learned by the trust company's foreclosure thereof, or by appellant's foreclosure of its mortgage, had it made appellee a party defendant thereto, which it did not. By appellant's payment and satisfaction of the trust company's mortgage, and by its laches in failing to foreclose its own mortgage, after it had a right to do so, during which time, by appellee's continuous and open and notorious possession of the property, it had at least constructive notice that appellee claimed some right or interest therein, appellee's position in relation to the transaction was so changed that his rights thereunder were prejudiced. We must, therefore, hold that by reason of appellant's delay in bringing its action and of its failure to take any notice whatever, during such time, of appellee's possession of the property and of his rights thereunder, it was not entitled to subrogation except as to such amount as appellee had in his hands of the unpaid purchase money at the time that he received notice of appellant's mortgage.

We are not in harmony with appellant's contention that it owns one-third of the real estate involved by reason of the fact that Mrs. Sprague did not join in the contract of sale made by her husband

with appellee, and that she did join in the execution of appellant's mortgage. When Edgar B. Sprague entered into the contract of sale with appellee, he thereby contracted to convey to appellee all of the title to the real estate sold, subject only to his wife's inchoate right therein if she should survive her husband. This rule of law is thus plainly stated in *Ohio Farmers Ins. Co.* v. *Bevis* (1897), 18 Ind. App. 17, 46 N. E. 928: "If a husband owning the fee simple title to real estate conveys the same, his wife not joining in the deed, the grantee at least acquires a perfect and absolute title in fee simple to two-thirds of the real estate conveyed, which no contingency, or condition, or state of facts growing out of the conveyance can affect. To the other one-third of the real estate, the grantee acquires a fee simple title, subject to be defeated if the wife of the grantor survives her husband." Sprague, having entered into a contract of sale with appellee by which he contracted to convey to appellee all of the title of the real estate sold, thereafter held the legal title to such real estate in trust for appellee, subject only to the inchoate right of his wife, and when Mrs. Sprague joined with her husband in mortgaging such legal title so held by him, she released and extinguished her inchoate interest beyond recall, but she did not thereby mortgage or convey such inchoate interest to appellant. *Mansfield* v. *Hodgdon* (1888), 147 Mass. 304, 17 N. E. 544; *Sharts* v. *Holloway* (1898), 150 Ind. 403, 50 N. E. 386. Such inchoate interest having been extinguished, appellee takes and holds said real estate free and clear of any claim of appellant based upon the inchoate interest of Mrs. Sprague.

From the time that appellee received notice of appellant's mortgage, he ceased to become a *bona fide* purchaser as against such mortgagee. Thereafter, he paid to Sprague, instead of to the receiver appointed by the court at the instance of appel-

lant, $110. At the time of receiving the notice of appellant's mortgage, appellee should have taken the advice of the receiver to consult a good lawyer. Instead of doing so, he consulted Sprague, whose conscience, we assume, was not troubled in advising appellee to make the future payments to him. Appellee should have made these subsequent payments on the purchase money to the receiver, that it might have been disbursed subject to the order of the court. Appellee should be charged with said $110 and interest thereon from the time of the respective payments in favor of appellant. If he will, therefore, pay such sum into court for the use of appellant, and file the certificate of such payment with the clerk of the Appellate Court within thirty days of the date of the rendition of this decision, the judgment is affirmed; otherwise it is reversed.