CITIZENS STATE BANK OF NEW CASTLE, Appellant–Defendant/Cross–Claims Plaintiff,

v.

COUNTRYWIDE HOME LOANS, INC., d/b/a America's Wholesale Lender, Appellee–Plaintiff,

Federal National Mortgage Association and Steuben County Treasurer, Appellees/Cross–Claims Defendants.

No. 76A03–0909–CV–423.

Court of Appeals of Indiana.

March 5, 2010.

Rehearing Denied May 10, 2010.

Robert G. Forbes, Forcum & Forbes, LLP, Hartford City, IN, Attorney for Appellant.

Donald L. Centers, Hannon Kolas & Centers, P.C., Indianapolis, IN, Attorney for Appellees Countrywide Home Loans, Inc. and Federal National Mortgage Association.

## OPINION

CRONE, Judge.

### Case Summary

Citizens State Bank of New Castle ("CSB") appeals the entry of summary judgment in favor of Countrywide Home Loans, Inc., d/b/a America's Wholesale Lender ("Countrywide") and Federal National Mortgage Association ("FNMA").[1] The sole issue presented for our review is whether the trial court erred when it entered summary judgment in favor of Countrywide and FNMA on Countrywide's complaint for strict foreclosure and denied CSB's motion for summary judgment on its complaint to foreclose judgment lien against FNMA. We reverse and remand with instructions for the trial court to enter summary judgment in favor of CSB.

### Facts and Procedural History

The undisputed relevant facts indicate that Kenneth D. Cloud and Rita K. Cloud were the co-owners of a parcel of real estate located in Fremont, Indiana. Countrywide obtained its mortgage on the property on April 27, 2005. On June 9, 2006, CSB obtained a default judgment against the Clouds in the Steuben Circuit Court in the sum of $111,499.38 based upon a promissory note executed by the Clouds in favor of CSB. Thereafter, Countrywide filed its complaint to foreclose mortgage against the Clouds on August 28, 2006, and obtained a judgment of foreclosure on October 30, 2006. Countrywide did not name CSB as a defendant in its complaint to foreclose despite the fact that CSB had properly recorded its default judgment against the Clouds. Therefore, CSB neither was made a party to nor had notice of the foreclosure action. Countrywide obtained title to the real estate following a sheriff's sale on February 22, 2007, and later recorded such title on March 15, 2007. Countrywide subsequently transferred title to the real estate to FNMA by limited warranty deed recorded on May 3, 2007.

After learning of CSB's judgment lien against the property, Countrywide filed its complaint for strict foreclosure against CSB on October 2, 2007. Countrywide sought an order foreclosing CSB's equity of redemption and interest in the real estate. CSB answered the complaint and also filed its own complaint to foreclose its judgment lien on the property naming FNMA and the Steuben County Treasurer as defendants. On July 8, 2008, the trial court consolidated both actions. CSB filed its motion for summary judgment on May

1. The Steuben County Treasurer is listed as a party to this action due to the original nature of the action as a strict foreclosure in the event that any tax lien would exist on the subject property. The Treasurer has not filed a brief in this appeal and, at this time, it does not appear that the Treasurer has asserted any interest in the property.

14, 2009. Countrywide and FNMA filed their joint cross-motion for summary judgment on June 15, 2009. Following a hearing, the trial court denied CSB's motion for summary judgment and entered summary judgment in favor of Countrywide and FNMA. CSB appealed.

### Discussion and Decision

■ CSB appeals the entry of summary judgment in favor of Countrywide and FNMA. CSB contends that the trial court should have granted its motion for summary judgment and denied Countrywide and FNMA's cross-motion for summary judgment. Our standard of review is well settled:

> When reviewing a grant or denial of a motion for summary judgment, we stand in the shoes of the trial court. Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). A genuine issue of material fact exists when there is a dispute, or when undisputed facts are capable of supporting conflicting inferences, about an issue which would dispose of the litigation. Once the moving party demonstrates, prima facie, that there is no genuine issue of material fact as to any determinative issue, the non-moving party must come forward with contrary evidence. Upon appeal, we do not weigh the evidence, but rather we consider the facts in the light most favorable to the non-moving party. We may sustain the judgment upon any theory supported by the designated evidence. Cross motions for summary judgment do not alter our standard of review.

*Cox v. Town of Rome City,* 764 N.E.2d 242, 245–46 (Ind.Ct.App.2002) (some citations and quotation marks omitted).

■ In this case, there is no dispute that CSB held a valid judgment lien on the subject property and that such lien was properly recorded prior to Countrywide's original foreclosure of the property. The question remains as to what rights, if any, Countrywide or FNMA has regarding Countrywide's current attempt at strict foreclosure of the property. It was not until recently that this Court has been asked to revisit at length the concept of strict foreclosure. In *ABN AMRO Mortgage Group, Inc. v. American Residential Services,* 845 N.E.2d 209 (Ind.Ct.App. 2006), we looked back to an opinion of our supreme court from 1887, in which it described strict foreclosure as follows:

> A strict foreclosure proceeds upon the theory that the mortgagee, or purchaser, has acquired the legal title, and obtained possession of the mortgaged estate, but that the right and equity of redemption, of some judgment creditor, junior mortgagee, or other person similarly situated, has not been cut off or barred. In such a case, the legal title of the mortgagor having been acquired, the remedy of strict foreclosure is appropriate to cut off the equity. and right of junior incumbrancers to redeem.
>
> Such persons have a mere lien upon, or an equity in, the land, which is subordinate to the right of the owner of the legal title. A statutory foreclosure, in such a case, would be manifestly inappropriate. The owner of the legal title may with propriety maintain a proceeding in the nature of a strict foreclosure, to bar the interest of persons who have a mere lien upon, or right of redemption in, the land.

*Id.* at 214–15 (quoting *Jefferson v. Coleman,* 110 Ind. 515, 517–18, 11 N.E. 465, 466–67 (1887)). Strict foreclosure permits a party who has acquired title through or after a foreclosure sale or who has ob-

tained title to mortgaged property through a deed in lieu of foreclosure, to cut off the interests of any junior lienholders who, for some reason, were not parties to the foreclosure action. *Id.* at 215.

Most recently, in *Deutsche Bank National Trust Co. v. Mark Dill Plumbing Co.,* 903 N.E.2d 166 (Ind.Ct.App.2009), we addressed the harsh concept of strict foreclosure within a set of facts quite similar to the facts at issue here. In *Deutsche Bank,* a lender filed a mortgage foreclosure action against its borrower, but failed to name junior judgment lienholders in the foreclosure action. *Id.* at 167. Judgment of foreclosure was entered, and the lender purchased the property at a sheriff's sale. Thereafter, the lender learned of the junior judgment liens and filed a strict foreclosure action to remove the liens from the title. The junior lienholders counterclaimed to foreclose their liens. Following cross-motions for summary judgment, the trial court entered summary judgment in favor of the junior lienholders. We affirmed on appeal. We noted that when junior lienholders are not made parties to the action, the foreclosure and sale cannot be enforced against them, and they are not precluded from exercising any right of redemption. *Id.* at 169–70. In sum, we concluded that the lender could not, by strict foreclosure, simply remove the liens of the junior lienholders from the lender's title to the real estate. *Id.* Instead, the junior lienholders who were not made party to the foreclosure were in no way bound by the foreclosure, and the purchaser at the foreclosure sale simply stepped into the shoes of the original holder of the real estate and took such interest subject to all existing liens and claims against it. *Id.* at 170 (citing *Watson v. Strohl,* 220 Ind. 672, 687, 46 N.E.2d 204, 210 (1943)).

■ On rehearing, we clarified our original opinion to specify the priority amongst the parties on remand. *See Deutsche Bank Nat'l Trust Co. v. Mark Dill Plumbing Co.,* 908 N.E.2d 1273 (Ind.Ct.App. 2009). Specifically, we looked to a decision of the Federal District Court for the Southern District of Indiana, applying Indiana law, and its explanation for determining the priority rights of superior and junior lienholders in cases where the superior lienholder has acquired fee simple title to the mortgaged property by foreclosure sale and no longer holds a mortgage. *See Brightwell v. United States,* 805 F.Supp. 1464 (S.D.Ind.1992) (citations omitted). The *Brightwell* court explained:

> In Indiana, a mortgagee's acquisition of fee simple title to mortgaged property generally results in a merger of the mortgage with the title, thus extinguishing the mortgage lien. Merger will not occur, however, and the lien will be preserved, where merger would harm the interests of the mortgagee. The key factor in deciding if merger has occurred is determining what the parties to the sale—primarily the mortgagee—intended. If intent is not express, but circumstances indicate that preservation will "benefit" the mortgagee, the court will presume that no merger was intended.
>
> The underlying purpose of this "anti-merger" rule—i.e., the benefit it is meant to confer—is protection of the mortgagee's priority. Specifically, the rule allows the mortgagee to prevent junior lienholders from stepping up in priority, foreclosing, and reducing the mortgagee's already diminished recovery, because it bars all but the mortgagee from re-foreclosing or reselling the property, and guarantees the mortgagee's priority in any proceeds. Put simply, the anti-merger rule gives a mortgagee first crack at any money generated by foreclosure on the proper-

ty, ahead of any junior lienholders, until it has been paid what it is owed in full. *Id.* at 1473–74. The court in *Brightwell* went on, borrowing the following language from the Tenth Circuit:

> By purchasing the property at the auction, the [mortgagee] intended to protect its lien, and perhaps junior lienholders, by preventing the property from being purchased below market value. It would be an absurd result to conclude that the [mortgagee] intended to destroy its own lien ... by taking action that arguably benefitted junior lienholders. Absent evidence to the contrary, we therefore presume that the [mortgagee] intended to preserve its lien.

*Id.* at 1474 (quoting *United States v. Colorado*, 872 F.2d 338, 340 (10th Cir.1989)). Because the lender's purchase of the real estate in *Deutsche Bank* was clearly intended to protect its lien, the purchase did not result in a merger of the mortgage with the title under Indiana's "anti-merger" rule. Thus, we clarified that, on remand, the lender who held fee simple title and the junior lienholders remained in the same priority positions with regard to the strict foreclosure as they held before the sheriff's sale. *Deutsche Bank*, 908 N.E.2d at 1275.

The principles enunciated in *Deutsche Bank*, are quite instructive to the case at bar and lead us to conclude that merger did not occur when Countrywide acquired title to the property by sheriff's sale; as such, we agree with Countrywide that its mortgage lien was preserved at that point. Thus, following the sheriff's sale whereby Countrywide acquired fee simple title to the property, Countrywide could have as-

serted its lien against any junior lienholders, such as CSB, who were not joined in the foreclosure action and who might have tried to "step up" in priority. However, that is not what happened here. Instead, Countrywide went further when it transferred the property by limited warranty deed to a third party, FNMA. Although this Court has not had occasion to do so until now, we specifically adopt the persuasive reasoning set forth in *Brightwell* on this issue.

■ As noted by the court in *Brightwell*, Indiana cases hold that the anti-merger rule is designed to benefit only the foreclosing mortgagee who is a party to the original sale. *Brightwell*, 805 F.Supp. at 1474 (citing *Ellsworth v. Homemakers Fin. Serv., Inc.*, 424 N.E.2d 166, 168 (Ind. Ct.App.1981); *Hanlon v. Doherty*, 109 Ind. 37, 9 N.E. 782, 785 (1887)). In light of the purpose of the anti-merger rule, which is to protect the mortgagee's priority and give the mortgagee "first crack" at a full recovery, there is no valid reason for that mortgage-assertion right to pass to subsequent purchasers or transferees. *See id.* To hold otherwise would permit for double recovery of the mortgage indebtedness, a result clearly not favored in equity and not intended by the anti-merger rule. Indeed, here, by transferring the property to FNMA, Countrywide has already had "first crack" at a full recovery ahead of any junior lienholders such as CSB and the purpose of the anti-merger rule has been satisfied.[2] *See id.* After the transfer to FNMA, Countrywide no longer had any interest in the property to protect, and there was no basis for its mortgage-asser-

---

2. The record does not indicate what consideration Countrywide obtained in exchange for its transfer of the property to FNMA. We presume Countrywide received some value in that transaction. However, it is of no mo-

ment whether Countrywide obtained what it was owed in full but simply that Countrywide had "first crack" at a full recovery. It is not our burden to protect Countrywide in an arm's-length transaction.

tion right to pass to FNMA.[3] *See id.*

■ Contrary to Countrywide and FNMA's suggestion, we conclude that *Brightwell* correctly states Indiana law regarding priority rights when a foreclosing mortgagee sells the property to a third party. We hold that while Countrywide's mortgage lien was preserved after it acquired title to the property via sheriff's sale, Countrywide's right to assert the mortgage against CSB was extinguished upon subsequent transfer of the property to FNMA and, thus, the mortgage-assertion right did not pass to FNMA. When property is transferred for value or resold to a third party, that party cannot then assert what was formerly a superior mortgage lien position against the judgment lien. Rather, the third party takes the property subject to the valid judgment lien. This is fair and just.[4] Accordingly, Countrywide's attempt at strict foreclosure fails as a matter of law.

Therefore, we reverse the trial court's entry of summary judgment in favor of Countrywide and FNMA. We remand to the trial court with instructions to enter summary judgment in favor of CSB on Countrywide's complaint for strict foreclosure and also to enter summary judgment in favor of CSB on its complaint to foreclose judgment lien against FNMA and the Steuben County Treasurer and all other remedies consistent with this opinion.

Reversed and remanded.

RILEY, J., and VAIDIK, J., concur.

---

3. Countrywide and FNMA ask that we extend application of the anti-merger rule to subsequent purchasers or transferees such as FNMA and treat them as "equitable assignees" of a preserved mortgage interest. They direct us to dicta contained in several Indiana cases which they contend support their position. *See, e.g., Troost v. Davis*, 31 Ind. 34 (1869); *Kelley v. Houts*, 30 Ind.App. 474, 66 N.E. 408 (1903); *Martin v. Adams Brick Co.*, 180 Ind. 181, 102 N.E. 831 (1913). First, we note that none of these cases deals specifically with the anti-merger rule and its application to third-party transferees in a strict foreclosure proceeding. Moreover, we note that the factual differences in each of these cases to the instant case are quite daunting and that equitable assignment of the mortgagee's rights was necessary under the specific facts of those cases pursuant to principles of equity.

We find these cases to be mere factual exceptions to the general anti-merger rule which, we agree with the *Brightwell* court, is not intended to benefit subsequent purchasers who were not parties to the original foreclosure sale.

4. We feel compelled to state the obvious. All of this could have been avoided had Countrywide conducted a thorough title search of the property prior to the original foreclosure or had FNMA done the same prior to purchasing the property from Countrywide, as such searches surely would have revealed CSB's properly recorded judgment lien. While Countrywide and FNMA fancy these mistakes as "technicalities," they are significant when applying principles of equity.