ABN AMRO MORTGAGE GROUP, INC., and/or Michael and Bunny Braughton, Appellants–Plaintiffs,

v.

AMERICAN RESIDENTIAL SERVICES, LLC, Appellee–Defendant.

No. 49A02–0508–CV–817.

Court of Appeals of Indiana.

April 12, 2006.

J. Philip Burt, Wesley N. Steury, Emily S. Patterson, Burt Blee Dixon Sutton & Bloom, LLP, Fort Wayne, for Appellants.

Jeffrey B. Cadwell, Smith & Wade, Carmel, for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

ABN AMRO Mortgage Group, Inc. ("ABN") and Michael and Bunny Braughton appeal the trial court's entry of summary judgment in favor of American Residential Services, LLC ("American"). We reverse and remand.

### Issues

The issues before us that we address are:

I. whether the trial court properly ruled that ABN should be substituted by the Braughtons as plaintiffs in this action;

II. whether the trial court properly granted a motion to strike certain evidence designated by ABN; and

III. whether the trial court erred in concluding that American possessed a valid judgment lien against property held by ABN and later by the Braughtons.

### Facts

On appeal, the parties agree that the following facts are accurate. On November 30, 2000, Allure Homes ("Allure") executed a mortgage in favor of ABN, secured by real property Allure owned in Indianapolis. Allure fell behind in its mortgage payments. On February 5, 2002, ABN issued and recorded a satisfaction and release of the mortgage; ABN claims this was done inadvertently. On February 28, 2002, Allure executed a quitclaim deed in lieu of foreclosure, transferring title to the property to ABN. On March 20, 2002, American obtained a judgment against Allure in the amount of $21,045.44 for outstanding business debts owed by Allure. ABN recorded the deed in Marion County on May 8, 2002.

In July 2002, ABN entered into a contract with a third party to complete construction on the real property it obtained from Allure. In January 2003, ABN filed a "Complaint for Strict Foreclosure of Mortgage," later amended, against American and two other parties who claimed to have liens against the former Allure property for satisfaction of judgments against or debts of Allure.[1] App. p. 16. The complaint asked for a judicial determination that ABN "holds title to the subject real estate free of any liens . . . ." App. pp. 43–44.

On February 7, 2003, while the action was pending, ABN sold the subject property to the Braughtons and conveyed to them a special warranty deed. The deed stated in part:

> Grantor . . . does hereby covenant with Grantee . . . that Grantor, has not made, done, executed or suffered any act or

---

1. The two parties in addition to American later were dismissed from the action.

thing whereby the above described premises or any part thereof now are or at any time hereafter shall or may be imperiled, charged, or incumbered in any manner whatsoever; and Grantor will forever warrant and defend the title to the above granted premises against all persons lawfully claiming the same from, through or under Grantor.

App. p. 276.

On November 30, 2004, American filed a "Motion to Substitute Real Party in Interest" to replace ABN with the Braughtons as plaintiff(s). App p. 147. On December 2, 2004, the trial court entered an order to substitute the Braughtons for ABN without waiting for a response from ABN. On December 9, 2004, ABN filed a motion for partial summary judgment; on December 14, 2004, it filed a motion objecting to the substitution of parties. On January 7, 2005, American filed its own motion for summary judgment as well as a motion to strike some of ABN's designated evidence. The motion to strike challenged ABN's evidence related to Allure's default on its mortgage and its execution of the quit-claim deed to ABN in lieu of foreclosure.

On February 3, 2005, the trial court conducted a hearing that originally was slated to address "all pending motions." App. p. 315. However, as revealed by the transcript, the focus of this hearing was whether the Braughtons should replace ABN as plaintiffs in the case. ABN's attorney indicated at the hearing that he was prepared to enter an appearance for the Braughtons, but the trial court stated that such action "would unnecessarily cloud the issues." Tr. pp. 34–35.

On May 31, 2005, the trial court granted American's motion to strike and its motion for summary judgment while denying ABN's motion for summary judgment. The court concluded that ABN was no longer a party in the action and that American's judgment lien was prior in right and time to any interest of ABN and the Braughtons. The court also ordered foreclosure of the lien and sale of the property to satisfy it.

On June 20, 2005, ABN filed a motion to correct error. On July 12, 2005, the trial court granted American's motion to strike the motion to correct error on the basis that ABN was no longer a party in the case. On July 22, 2005, the law firm that had been representing ABN officially entered an appearance on behalf of the Braughtons. Also on that date, ABN and the Braughtons filed a joint notice of appeal of the trial court's summary judgment rulings.

## Analysis

### I. Substitution of Parties

ABN asserts that the trial court erred in ordering that it be substituted with the Braughtons as plaintiff(s). American first raised the issue of substitution on November 30, 2004, with its "Motion to Substitute Real Party in Interest" because ABN had conveyed title to the property at issue to the Braughtons. App. p. 147. There is no question, however, that ABN possessed title to the property when it initiated this cause of action and, therefore, was undoubtedly a real party in interest at that time under Indiana Trial Rule 17. "In a case of transfer of interest subsequent to the commencement of the action, substitution of the person to whom the interest is transferred is permitted but is not required and the action may be continued by or against the original party." *Sink & Edwards, Inc. v. Huber, Hunt & Nichols, Inc.,* 458 N.E.2d 291, 297 (Ind.Ct. App.1984) (citing Ind. Trial Rule 25(C)). "Trial Rule 25 is permissive." *Id.*

Even if Trial Rule 17's real party in interest requirement applies here, we note that to meet this requirement "[a]

party must demonstrate both a personal stake in the outcome of the lawsuit and, at a minimum, that it is in immediate danger of sustaining some direct injury as a result of the conduct at issue." *Hosler ex rel. Hosler v. Caterpillar, Inc.*, 710 N.E.2d 193, 197 (Ind.Ct.App.1999), *trans. denied.* ABN arguably has an equal interest with the Braughtons in the outcome of this litigation. In fact, if anything, ABN might have more of an interest in the outcome because it contractually warranted to the Braughtons that title to the property was free of any clouds. ABN is the party that will be directly responsible if that turns out to be untrue, and it represented in open court that if it was determined that American had a valid judgment lien against the property, it would pay the judgment on the Braughtons' behalf in order to clear title.

■ Even if it was proper in this case to consider the Braughtons as sole plaintiffs after they obtained title to the property, this does not affect the merits of this case. Ever since American first questioned whether ABN was the proper party to continue litigating this case, ABN's counsel assured the trial court that if the Braughtons were substituted as parties, counsel would continue litigating the case on the Braughtons' behalf. This also is in keeping with the special warranty deed ABN gave the Braughtons. After the trial court issued a final ruling indicating that ABN no longer was a party in this case, counsel did in fact make an appearance for the Braughtons, and they are a named party in this appeal. The dispositive issue in this case is whether American's judgment against Allure caused a judgment lien to attach to the property now owned by the Braughtons. Resolution of this question is the same regardless of who possessed the property at the time of the judgment and at the present time.

## II. Motion to Strike

ABN and the Braughtons argue that the trial court erred in granting American's motion to strike designated evidence relating to the Allure mortgage, default, and execution of a quitclaim deed on February 28, 2002. They contend that the primary basis for this evidence—Allure's mortgage and later quitclaim deed in favor of ABN— were documents attached to ABN's original complaint and should have been deemed admissible pursuant to Indiana Trial Rule 9.2. American responds that ABN has waived reliance on Rule 9.2 and in any event that the rule does not apply here.

■ We believe that American effectively has conceded that the evidence it successfully asked the trial court to strike from ABN's designation of materials accurately reflect the relevant facts of this case. The statement of facts section of ABN and the Braughtons' brief relates the circumstances of Allure's mortgage, subsequent default, and execution of a quitclaim deed in lieu of foreclosure to ABN on February 28, 2002. The statement of the facts section of American's brief explicitly agrees with this recitation of the facts, as it was permitted to do under Indiana Appellate Rule 46(B)(1). American does explicitly disagree with some of ABN's statement of the facts, including whether ABN properly filed a motion for summary judgment after the trial court had entered an order substituting it with the Braughtons as plaintiffs. Elsewhere, in the argument section of American's brief, it lists a timeline of events wherein it states that Allure executed a quitclaim deed in favor of ABN on February 28, 2002, before American obtained a judgment against Allure. *See* Appellee's Br. p. 8. In light of American's express acceptance of ABN's statement of the relevant facts, we conclude that it has

waived any argument that the trial court properly struck evidence designated by ABN regarding the Allure mortgage, default, and execution of a quitclaim deed on February 28, 2002. We will consider those facts as conceded.

### III. Validity of Judgment Lien

We now turn to the merits of the grant of American's motion for summary judgment.[2] Summary judgment is appropriate only if the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); Beta Steel v. Rust, 830 N.E.2d 62, 67 (Ind. Ct.App.2005). We must construe all facts and reasonable inferences drawn from those facts in favor of the nonmoving party. Beta Steel, 830 N.E.2d at 67. "The review of a summary judgment motion is limited to those materials designated to the trial court and we must carefully review decisions on summary judgment motions to ensure that parties are not improperly denied their day in court." Id. American claims it possesses a valid judgment lien against the property now owned by the Braughtons; ABN and the Braughtons contend there is no lien.

■ We first address the particular label that ABN placed on its cause of action against American, "Complaint for Strict Foreclosure of Mortgage." App. p. 40. American argues, and the trial court con-

cluded, that the remedy of "strict foreclosure" was not available to ABN in this case and that ABN's seeking such a remedy is inconsistent with its earlier acceptance of a quitclaim deed in lieu of foreclosure from Allure. We disagree.

■ The concept of "strict foreclosure" has been mentioned in very few Indiana cases. In fact, only two state cases, from the late 1800s, have used the phrase "strict foreclosure" in the sense that ABN wishes to use it. In 1887, our supreme court described "strict foreclosure" as follows:

A strict foreclosure proceeds upon the theory that the mortgagee, or purchaser, has acquired the legal title, and obtained possession of the mortgaged estate, but that the right and equity of redemption, of some judgment creditor, junior mortgagee, or other person similarly situate, has not been cut off or barred. In such a case, the legal title of the mortgagor having been acquired, the remedy by strict foreclosure is appropriate to cut off the equity and right of junior incumbrancers to redeem.

Such persons have a mere lien upon, or an equity in, the land, which is subordinate to the right of the owner of the legal title. A statutory foreclosure, in such a case, would be manifestly inappropriate. The owner of the legal title may with propriety maintain a proceeding in the nature of a strict foreclosure,

---

**2.** ABN and the Braughtons argue that the trial court committed reversible error in granting American's motion for summary judgment without first conducting a hearing on the merits of that motion. At the time summary judgment was granted in this case, Indiana Trial Rule 56(C) provided in part, "The court *shall* conduct a hearing on [a summary judgment] motion which shall be held not less than ten (10) days after the time for filing the response." (Emphasis added). We will not address this argument in depth because we conclude on the merits that sum-

mary judgment in favor of American must be reversed. However, we wish to point out to practitioners that effective January 1, 2006, Trial Rule 56(C) was amended to eliminate the mandatory nature of a summary judgment hearing. The rule now states in part, "The court *may* conduct a hearing on the motion. However, upon motion of any party made no later than ten (10) days after the response was filed or due, the court *shall* conduct a hearing ...." (Emphases added). Thus, summary judgment hearings no longer are required automatically, but must be requested by a party.

to bar the interest of persons who have a mere lien upon, or right of redemption in, the land.

*Jefferson v. Coleman,* 110 Ind. 515, 517–18, 11 N.E. 465, 466–67 (1887). Later, our supreme court observed, "A strict foreclosure cannot be had against one who owns the fee to land. Such a foreclosure could only be had where the statutory foreclosure and sale are inappropriate." *Jackson v. Weaver,* 138 Ind. 539, 541, 38 N.E. 166, 167 (1894). More recently, the United States District Court for the Southern District of Indiana stated,

> Strict foreclosure permits a party who acquired title through or after a foreclosure sale to cut off the interests of any junior lienholders who, for some reason, were not parties to the foreclosure action. Strict foreclosure, therefore, is quite different from judicial foreclosure, where a mortgagee sells the property to satisfy an underlying secured debt.

*Brightwell v. United States,* 805 F.Supp. 1464, 1469 (S.D.Ind.1992).[3]

The type of "strict foreclosure" mentioned in *Jefferson, Jackson, & Brightwell* is much different from either a modern concept of what "foreclosure" entails and what the phrase "strict foreclosure" meant under the English common law. That definition of "strict foreclosure" is, "A rare procedure that gives the mortgagee title to the mortgaged property—without first conducting a sale—after a defaulting mortgagor fails to pay the mortgage debt within a court-specified period." Black's Law

Dictionary 658 (7th ed.1999); *see also Skendzel v. Marshall,* 261 Ind. 226, 240, 301 N.E.2d 641, 649–50 (1973). Here, ABN was not seeking to obtain title from a mortgagee when it filed its complaint for "strict foreclosure"; it already possessed legal title to the property and simply was attempting to cut off the interests of purported junior lienholders, such as American. This fits within the Indiana definition of a "strict foreclosure" proceeding.

■ Additionally, it is evident to us that what ABN labeled a "strict foreclosure" action also is readily recognizable as an ordinary action to quiet title. ABN, as fee holder of the property, was entitled to initiate an action to remove any clouds that cast doubt upon the title; the Braughtons, as successors, are entitled to continue that action. *See Terpstra v. Farmers and Merchants Bank,* 483 N.E.2d 749, 757 (Ind.Ct. App.1985), *trans. denied* (citing *Walters v. Hartwig, et al.,* 106 Ind. 123, 6 N.E. 5 (1886)). Such an action may be equitable or statutory in nature. *Id.* ABN did not follow the procedures for a statutory action to quiet title under Indiana Code Section 32–30–3–14, but longstanding common law predating the quiet title statute provides an independent equitable basis for quieting title. *See Walters,* 106 Ind. at 124, 6 N.E. at 5. The quiet title statute supplements, but does not replace, the common law basis for quieting title. *See* Ind.Code § 32–30–3–15; *see also Grantham Realty Corp. v. Bowers,* 215 Ind. 672, 683, 22 N.E.2d 832, 837–38 (1939).[4]

---

**3.** Although *Brightwell* refers to "a party who acquired title through or after a foreclosure sale," this particular requirement for "strict foreclosure" is not mentioned in either *Jefferson* or *Jackson.* We see no reason why "strict foreclosure" cannot be utilized by a party who obtained title to mortgaged property through a deed in lieu of foreclosure. Such a deed is one "by which a borrower conveys fee-simple title to a lender in satisfaction of a

mortgage debt and as a substitute for foreclosure." Black's Law Dictionary 423 (7th ed.1999).

**4.** By not filing a statutory quiet title action, ABN could not quiet title to the property as to the whole world, but only as to the parties named in its complaint. *See Grantham,* 215 Ind. at 683, 22 N.E.2d at 837–38.

We also observe that Indiana is a notice pleading jurisdiction; it does not require parties to state a particular legal theory under which they plan to proceed. *See Noblesville Redevelopment Comm'n v. Noblesville Associates Ltd. P'ship*, 674 N.E.2d 558, 563 (Ind.1996). Pleadings are to be treated according to their content rather than their caption. *Campbell v. Eckman/Freeman & Associates*, 670 N.E.2d 925, 929 (Ind.Ct.App.1996), *trans. denied*. Under notice pleading, a complaint is sufficient if the opposing party has been sufficiently notified concerning the claim so as to be able to prepare to meet it. *Noblesville*, 674 N.E.2d at 563–64. " 'A complaint's allegations are sufficient if they put a reasonable person on notice as to why plaintiff sues.' " *Id.* at 564 (quoting *Capitol Neon Signs, Inc. v. Indiana Nat'l Bank*, 501 N.E.2d 1082, 1085 (Ind.Ct.App.1986)).

Here, there is no doubt that American was put on notice as to why it was being sued by ABN, regardless of the label ABN chose to place on its complaint. The complaint asserted that ABN acquired title to the property before American obtained a judgment against Allure and requested relief in the form of a judicial declaration that ABN owned the property free of any lien American might assert against the property. The label ABN placed on the complaint is largely irrelevant.[5]

Additionally, it is clear that the relief ABN seeks against American is in no way inconsistent with its acceptance of a deed in lieu of foreclosure from Allure. That deed transferred legal title to the property from Allure to ABN; the present cause of action seeks to remove the cloud of American's purported judgment lien from the title. The parties involved and the relief sought are completely different, and there is no inconsistency. ABN's action was not dependent upon whether it held a valid mortgage upon the land; the action solely concerned the validity of American's lien upon the property's title.

Having settled that ABN's cause of action against American was proper, regardless of the name given to it, we now address the merits of the trial court's conclusion that American possessed a valid judgment lien against the property. "A judgment lien is purely statutory in Indiana." *Arend v. Etsler*, 737 N.E.2d 1173, 1175 (Ind.Ct.App.2000) (citing Ind. Code § 34–55–9–2). Under Indiana Code Section 34–55–9–2, "a money judgment becomes a lien on the debtor's real property when the judgment is recorded in the judgment docket in the county where the realty held by the debtor is located." *Id.*

Two recording statutes are relevant to determine whether American's judgment against Allure, rendered after Allure had executed a deed transferring the property to ABN but before such deed was recorded, caused a judgment lien to attach to the property. Indiana Code Section 32–21–3–3 provides:

> A conveyance of any real estate in fee simple or for life, a conveyance of any future estate, or a lease for more than three (3) years after the making of the lease is not valid and effectual against any person other than:
>
> (1) the grantor;
>
> (2) the grantor's heirs and devisees; and

---

5. ABN's complaint also sought alternative relief in the form of actual foreclosure and sale of the property, and subordination of American's lien (if it was found to be valid) to ABN's purportedly still-existing mortgage on the property. As we will explain, American does not possess a lien against the property and so there would be no need in this case for ABN to seek or obtain the alternative relief.

(3) persons having notice of the conveyance or lease;

unless the conveyance or lease is made by a deed recorded within the time and in the manner provided in this chapter.

Indiana Code Section 32–21–4–1 provides:

(a) The following must be recorded in the recorder's office of the county where the land is situated:

(1) A conveyance or mortgage of land or of any interest in land.

(2) A lease for more than three (3) years.

(b) A conveyance, mortgage, or lease takes priority according to the time of its filing. The conveyance, mortgage, or lease is fraudulent and void as against any subsequent purchaser, lessee, or mortgagee in good faith and for a valuable consideration if the purchaser's, lessee's, or mortgagee's deed, mortgage, or lease is first recorded.

In *Runyan et al. v. McClellan et al.*, 24 Ind. 165 (1865), our supreme court analyzed the virtually identically-worded predecessors to these statutes in a case whose facts are parallel to the facts here. There, a landowner conveyed his real property to others in June 1860, but the deed was not recorded until June 1861. Meanwhile, in February 1861, a judgment was rendered against the landowner; much like under the present scheme, the judgment automatically attached as a lien upon any real property owned by the defendant in the county where the judgment was rendered. An assignee of the judgment claimed that the lien had attached to the property the landowner had conveyed in June 1860 because such conveyance had not yet been recorded at the time judgment was rendered.

Our supreme court rejected this argument. It held, "as [the landowner] had sold and conveyed the lot in controversy . . . long prior to the date of the judgment, he had no title or interest in it, at that time or afterward, to become the subject of a judgment lien. The judgment plaintiffs, therefore, acquired no lien on, or interest in, the lot by their judgment." *Id.* at 167. The court continued, "the plaintiffs . . . can only claim an interest in the lot by virtue of their judgment attaching as a lien thereon, through a title in [the landowner], and as no such title existed, it follows that a failure to record the deed . . . and the ignorance of the judgment plaintiffs of its existence, cannot create such lien." *Id.* In conclusion, the court held that the deed in the case could "only be held void as to a person who has, without notice, in good faith, *and for a valuable consideration,* acquired a legal interest in the land." *Id.* at 169 (emphasis added).

 There is no basis for distinguishing *Runyan* from the present case, nor may we choose to ignore it simply because it is over 140 years old. It has never been questioned or overruled. The statutes it analyzed are substantively identical to the present statutes.[6] Further-

---

**6.** The statutes *Runyan* analyzed read, "No conveyance of any real estate in fee simple, & c., shall be valid and effectual against any person other than the grantor, his his [sic] heirs and devisees, and persons having notice thereof, unless it is made by a deed recorded within the time, and in the manner provided in this act," and "every conveyance or mortgage of lands, or of any interest therein, and every lease for more than three years, shall be recorded in the recorder's office of the county where such lands shall be situated; and every conveyance or lease, not so recorded within ninety days from the execution thereof, shall be fraudulent and void as against any subsequent purchaser or mortgagee, in good faith, and for a valuable consideration." *Runyan,* 24 Ind. at 166–67. The only substantive difference between the 1865 statutes and the present ones is that the old statutes provided

more, the result in *Runyan* is entirely consistent with the purpose behind the recording statutes. That purpose is to provide protection to subsequent purchasers, mortgagees, and lessees of real property. *Meyer v. Marine Builders, Inc.,* 797 N.E.2d 760, 774 (Ind.Ct.App.2003). "A record outside the chain of title does not provide notice to bona fide purchasers for value." *Id.* The recording statutes make no mention of offering protection to parties who might obtain other types of interests in property, such as a potential judgment lien holder. Also, although record title is evidence of ownership, "recording does not establish ownership, and whether or not a deed is recorded has no effect on its validity." *Patterson v. Seavoy,* 822 N.E.2d 206, 211 (Ind.Ct.App.2005).

Here, when American obtained a judgment against Allure, Allure no longer possessed title to the real estate at issue. Allure had conveyed it to ABN several weeks before.[7] Pursuant to *Runyan,* the judgment against Allure could not attach to the property because Allure no longer owned it; ABN did. Additionally, American did not pay "valuable consideration" to obtain an interest in the property. It was in a position wholly different from a potential purchaser, mortgagee, or lessee of the property who would want to verify the recorded ownership of the title before paying to obtain an interest in it. American was not directly interested in obtaining this particular property from Allure. It pursued and recovered a judgment against Allure based on unrelated debts. How that judgment is to be paid, whether by

attachment to property owned by Allure or otherwise, is ancillary to American's underlying lawsuit against Allure. In sum, the prior conveyance from Allure to ABN is valid as to American because American was not a purchaser, mortgagee, or lessee of the property who obtained an interest in it by paying valuable consideration. The recording statutes do not govern this situation. American does not have a judgment lien against the subject property.[8] The trial court erred as a matter of law in concluding otherwise.

### Conclusion

Because American does not possess a valid judgment lien against the Braughtons' property, the trial court erred in granting American's motion for summary judgment. We reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

SHARPNACK, J., and RILEY, J., concur.

---

a time limit for recording a deed; the present statutes do not.

7. We note that there is no claim or evidence in this case that the conveyance from Allure to ABN was done with the intention of defrauding American or any of Allure's other creditors.

8. This conclusion makes it unnecessary to address ABN's arguments that it still possessed a valid mortgage on the property when American obtained the judgment against Allure. The dispositive issue as far as the validity of American's judgment lien is concerned is whether Allure still owned the property at the time of the judgment; it did not.