## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 03 2020, 5:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew A. Griffith
Griffith Xidias Law Group LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Scott J. Fandre
Krieg DeVault LLP
Mishawaka, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Celso Abraham Clemente Ramirez, *Appellant-Plaintiff,* <br><br> v. <br><br> Swages Real Estate, LLC,[1] *Appellee-Defendant.* | April 3, 2020 <br><br> Court of Appeals Case No. 19A-PL-2174 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Patrick J. Dietrick, Judge <br><br> Trial Court Cause No. 49D12-1402-PL-4128 |

**Mathias, Judge.**

---

[1] Several other defendants are named in the complaint below, but the appealed order pertains only to the complaint against Swages Real Estate, LLC. None of the additional defendants below entered an appearance, submitted a brief, or otherwise participated on appeal.

[1] Celso Abraham Clemente Ramirez a/k/a Maynor Clemente Ramos ("Maynor") appeals the judgment of the Marion Superior Court denying his claim against Swages Real Estate, LLC ("Swages") regarding certain property located at 5464 East 18th Street in Indianapolis ("the Property"). On appeal, Maynor presents six issues, which we consolidate and restate as:

I. Whether the trial court abused its discretion by admitting certain evidence;

II. Whether the trial court erred in concluding that Maynor was barred from recovery by the equitable doctrine of unclean hands;

III. Whether the trial court clearly erred by concluding that Maynor had granted authority to a third party to sell the Property; and

IV. Whether the trial court clearly erred by failing to award Maynor title to the Property, damages, and attorney fees.

Because the trial court did not err in concluding that Maynor did not meet his burden of showing that he held title to the Property, we affirm.

## Facts and Procedural History[2]

[2] The identity of Maynor is a key factor in the resolution of this case. The name on his birth certificate is Maynor Clemente Ramos, but he has also used other names, including Maynor Clemente Judiel Ramos and Celso Abraham

---

[2] Because Ramirez appeals following a bench trial in which the trial court entered judgment denying his claims, we restate the facts in the light most favorable to the trial court's judgment. We remind Ramirez's counsel that the Statement of Facts contained in an Appellant's Brief must be "stated in accordance with the standard of review appropriate to the judgment or order being appealed." Ind. Appellate Rule 46(a)(6)(b).

Clemente Ramirez. Maynor has a cousin in Guatemala whose name is Celso Abraham Celmente Ramirez. Maynor was born in Guatemala and entered the United States illegally in 1999 to visit his father, who then lived in Florida. Maynor testified that he began to use the name Celso Abraham Clemente Ramirez shortly after his entry into this country. Although Maynor was almost immediately detained by immigration authorities, he was released and remained in the United States. Maynor later settled in Indianapolis, where he began a construction business.[3]

[3] Maynor testified that, in December 2008, he used the services of a real estate broker, Hilda Ellis ("Ellis"), to help purchase the Property. The Property was transferred to "Celso A. Ramirez" on December 11, 2008, via a warranty deed in consideration for $25,000. Maynor used a false identification to purchase the property; specifically he used a consular identification card issued by the government of Guatemala that listed his name as "Celso Abraham Ramirez," his cousin's name. This identification card also listed a birthdate that was not the same as Maynor's actual birthdate. Maynor admitted at trial that the name on his birth certificate was Maynor Clemente Ramos, and he used his birth name in his request for asylum to federal immigration authorities. Moreover,

---

[3] Maynor also ran a bus company in Guatemala, which became embroiled in a conflict with local criminal gangs. As a result of the threats to his safety from these gangs in Guatemala, Maynor was eventually granted asylum in this country after his 2011 deportation.

Ellis identified Ramirez at trial as "Maynor Celso" and "Maynor Clemente Judiel Ramos." Tr. p. 16.

[4] In Indianapolis, Maynor began a relationship with Wendi Linares ("Linares"), with whom he eventually had a child. Linares assisted in running Maynor's business. On July 20, 2011, Maynor was detained by federal immigration authorities and deported to Guatemala on August 4, 2011, where he continued to run his busing company.

[5] On August 3, 2011, while Maynor was still in custody in the United States, a durable power of attorney was executed and notarized in Guatemala by "Celso Abraham Clemente Ramirez aka Celso A. Ramirez," designating Linares as attorney-in-fact for Ramirez. The power of attorney granted to Linares included:

> the full power and authority to manage and conduct all of my affairs, and to exercise my legal rights and powers, including those rights and powers that I may acquire in the future, including the following:
>
> * * *
>
> **B. Buy and Sell**. To purchase, sell, mortgage, grant options, or otherwise deal in any way in any real property or personal property, tangible or intangible, or any interest therein, upon such terms as the Agent considers proper . . . .

Ex. Vol, Plaintiff's Ex. 21. Using this power of attorney, Linares executed a purchase agreement on behalf of "Celso A. Ramirez" for the purchase and sale

of the Property. On June 27, 2013, Swages purchased the property, paying "Celso Ramirez" $29,500. Tr. p. 151.

[6] Maynor returned to Indianapolis in October 2013, and was granted asylum in the United States. When he returned to Indianapolis, he discovered that Linares had sold the Property. Maynor, through counsel, demanded that Swages return the property to him, but Swages declined.

[7] Accordingly, on February 14, 2014, Maynor filed a complaint naming Swages and Linares, among others, as defendants. Maynor also filed a *lis pendens* notice against the Property. Swages filed a response, asserting a third-party claim for fraud against Linares. On June 25, 2019, Maynor, Linares, and the other defendants reached settlement agreements, leaving only Swages as a defendant and Linares as a third-party defendant.

[8] On June 24, 2019, the trial court held a bench trial on Maynor's claims against Swages. At trial, Maynor twice requested leave to amend the pleadings to conform with the evidence, arguing that he should be permitted to bring claims of trespass, frivolous defense, and conversion. The trial court denied Maynor's requests. On August 19, 2019, the trial court entered findings of fact and conclusions of law denying Maynor's claims. The trial court interpreted Maynor's claim against Swages as an equitable claim to quiet title and determined that Maynor could not seek equitable relief because he came to the court with "unclean hands." More importantly, however, the trial court

concluded that Maynor had not met his burden of showing that he held title to the Property, writing:

> 46.   Plaintiff has not proved by a preponderance of the evidence that he holds title to the Property.
>
> 47.   Plaintiff claims he holds title to the Property.
>
> 48.   However, Plaintiff admitted that he has used multiple names/aliases in his life.
>
> 49.   **Title to the Property was taken under the name of Celso A. Ramirez, but Plaintiff has not provided valid identification showing that Celso A. Ramirez is his name.**
>
> 50.   In deportation proceedings Plaintiff was identified as Minor [sic] Clemente Ramos by the United States Department of Justice.
>
> 51.   Further, Plaintiff admits that he has a cousin by the name of "Celso Abraham Clemente Ramirez."
>
> 52.   **It is impossible to know if Plaintiff was ever the true title holder of the Property**.
>
> 53.   Merely attending the closing and tendering funds to purchase the Property does not necessarily make you the title holder of the Property. You can purchase property on behalf of others.
>
> 54.   It is impossible for this Court, as trier of fact, to determine if it was ever actually Plaintiff that held title to the Property.
>
> 55.   Plaintiff cannot meet his burden proof so this Court denies Plaintiff the equitable relief he seeks.

Appellant's App. pp. 31–32 (emphases added). Maynor now appeals.

# Standard of Review

[9] In cases where the trial court enters findings of fact and conclusions of law, our standard of review is well settled:

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

*RCM Phoenix Partners, LLC v. 2007 E. Meadows, LP,* 118 N.E.3d 756, 759–60 (Ind. Ct. App. 2019), *trans. denied*. "Moreover, '[w]e may affirm a judgment on any legal theory, whether or not relied upon by the trial court, so long as the trial court's findings are not clearly erroneous and support the theory adopted.'" *Id*. at 760. (citing *Mitchell v. Mitchell*, 695 N.E.2d 920, 923–24 (Ind. 1998)).

[10] We also note that, as the plaintiff, Maynor bore the burden of proof at trial. A judgment entered against a party who bore the burden of proof at trial is a negative judgment. *DeGood Dimensional Concepts, Inc. v. Wilder*, 135 N.E.3d 625, 632 (Ind. Ct. App. 2019) (citing *Stoffel v. JPMorgan Chase Bank*, 3 N.E.3d 548,

552 (Ind. Ct. App. 2014)). We will not reverse a negative judgment on appeal unless it is contrary to law. *Id.* To determine whether a judgment is contrary to law, we consider the evidence in the light most favorable to the judgment, together with all the reasonable inferences to be drawn therefrom. *Id.* (citing *Stoffel*, 3 N.E.3d at 553). A party appealing from a negative judgment must show that the evidence "points unerringly to a conclusion different than that reached by the trial court." *Id.* (citing *Smith v. Dermatology Assoc.*, 977 N.E.2d 1, 4 (Ind. Ct. App. 2012)).

[11] As our supreme court recently observed, "It is hard to conceive of a situation where an appellant would satisfy the sufficiency-based 'clearly erroneous' standard of [Trial] Rule 52 yet would fail to meet the supposedly more onerous negative-judgment standard." *Town of Brownsburg v. Fight Against Brownsburg Annexation*, 124 N.E.3d 597, 602 (Ind. 2019). The court summarized the differences between the clearly erroneous standard on the one hand and the negative judgment standard on the other: "In one, the inquiry is essentially whether there is **any** way the trial court could have reached its decision. In the other, it is whether there is **no** way the court could have" done so. *Id.* (quoting *Spranger v. State*, 650 N.E.2d 1117, 1120 (Ind. 1995) (emphasis in original)). It is with this stringent standard that we review Maynor's claims.

## Discussion and Decision

[12] Maynor presents several issues for our review. He first argues that the trial court erred by considering materials that were submitted to the court prior to trial but

that were never admitted into evidence at trial, specifically referring to: (1) Ellis's affidavit submitted in support of summary judgment; (2) Linares's affidavit submitted in support of her motion to dismiss; (3) an exhibit attached to Swages's answer; (4) an exhibit attached to the complaint; and (5) Linares's supplemental affidavit submitted in support of a motion to strike. Maynor claims that this "post-trial" evidence is not part of the record and could not properly be considered by the trial court in its judgment.

[13] First, we do not agree that these materials are not part of the record. They were submitted by the parties in support of various pre-trial motions; therefore, they are part of the trial court's record. *See* Ind. Appellate Rule 27 ("The Record on Appeal shall consist of the Clerk's Record and all proceedings before the trial court . . . , whether or not transcribed or transmitted to the Court on Appeal."); Ind. Appellate Rule 2(E) ("The Clerk's Record is the Record maintained by the clerk of the trial court . . . and shall consist of the Chronological Case Summary (CCS) and all papers, pleadings, documents, orders, judgments, and other materials filed in the trial court or . . . listed in the CCS."). Moreover, even if the trial court should not have considered these items in coming to its final judgment, any error was harmless, as the parts of the trial court's findings that do not refer to this evidence are sufficient to support the trial court's judgment.

[14] The remainder of Maynor's claims are based on the premise that he holds title to the Property. The trial court found that Maynor had not met his burden of proving that he holds title to the Property. Thus, we consider this dispositive question.

[15] For a plaintiff to prevail in an action to quiet title, the plaintiff must prove that he owns superior title to the property in question. *See* 24 Ind. Law Encyc. Quieting Title § 26 ("The complaint in an action to quiet title must, by appropriate allegations, show title in the plaintiff as to the property in controversy at the time the action was commenced.") (footnote omitted); 65 Am. Jur. 2d Quieting Title § 27 ("To maintain a quiet title action, the complainant must own or have legal title to, or an interest in, the property in question . . . ."). An action to quiet title may be equitable or statutory in nature. *ABN AMRO Mortgage Grp., Inc. v. Am. Residential Servs., LLC*, 845 N.E.2d 209, 215 (Ind. Ct. App. 2006) (citing *Terpstra v. Farmers and Merchants Bank,* 483 N.E.2d 749, 757 (Ind. Ct. App. 1985), *trans. denied).*[4]

[16] Here, there is no indication that Maynor followed the procedures for a statutory action to quiet title, and the trial court therefore considered his claim as an independent, equitable claim to quiet title. *See id.* (even where plaintiff did follow procedures for statutory quiet title action, "longstanding common law predating the quiet title statute provides an independent equitable basis for quieting title."). Maynor presented evidence that "Celso A. Ramirez" purchased the Property on December 11, 2008. Both he and Ellis testified that they attended a real estate closing where Maynor purchased the Property in the name of Celso A. Ramirez. But the trial court simply did not believe that

---

[4] "The quiet title statute supplements, but does not replace, the common law basis for quieting title." *Id.* The distinction between the statutory and equitable actions is that a statutory action quiets title "as to the whole world," whereas an equitable action quiets title "only as to the parties named in [the] complaint." *Id.*

Maynor was, in fact, Celso A. Ramirez. Instead, the trial court believed that Maynor purchased the Property in the name of, or on behalf of, Celso A. Ramirez, perhaps to avoid detection under his own name for living in the United States without legal authorization. Celso A. Ramirez was also the name of Maynor's cousin in Guatemala, which lends credence to the idea that Maynor simply used a relative's name. The identification Maynor provided to establish that he was Celso A. Ramirez did not match Maynor's name or birth date. The bottom line is that the trial court was under no obligation to credit any part of either Maynor's or Ellis's testimony. And given the confusion surrounding whether Maynor purchased the Property on behalf of his cousin, or whether Maynor had essentially assumed the identity of his cousin, the trial court was well within its discretion to conclude that Maynor did not establish that he was the Celso A. Ramirez in whose name the Property was titled.

[17] Moreover, even if Maynor did establish that he was the owner of the Property, the trial court concluded that he was precluded from seeking the equitable relief of quieting title under the doctrine of "unclean hands."

> [T]his doctrine is one of a number of maxims applied when deciding if a party who seeks equitable relief has behaved in a manner justifying that relief. *See Wedgewood Cmty. Ass'n, Inc. v. Nash*, 810 N.E.2d 346, 347 (Ind. 2004) (Rucker, J., dissenting from denial of transfer). The doctrine of unclean hands requires that "'he who seeks equity . . . come into court with clean hands'" and "'closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.'" *Id.* (quoting *ABF Freight Sys., Inc. v. NLRB*, 510

U.S. 317, 330 (1994) (Scalia, J., concurring)). "'Almost any kind of conduct the [court] may consider to be unethical or improper might suffice to bar the plaintiff's claim, even if the conduct is not actually illegal.'" *Id.* at 347–48 (quoting 1 Dan B. Dobbs, *Law of Remedies* 2.4(2) (2d ed. 1993)).

*Woodruff v. Ind. Family & Soc. Servs. Admin.*, 964 N.E.2d 784, 792 n.5 (Ind. 2012).

[18]    Maynor takes issue with the trial court's conclusion that he had unclean hands. He claims that his status at the time of the Property's purchase as an undocumented immigrant cannot itself constitute unclean hands, noting that he has since been granted asylum in the United States. But the trial court did not base its conclusion solely on Maynor's status as an undocumented immigrant. The trial court focused more on the fact that Maynor used his cousin's name and identity to conduct his business in Indiana. Maynor claims that, in Hispanic culture, it is common for an individual to use a name other than his or her given name. Even if this were the case, the trial court did not, as suggested by Maynor, ignore this cultural norm. It simply did not believe that this was the reason Maynor purchased the Property in the name of Celso A. Ramirez. Indeed, Maynor used his birth name in his asylum proceedings. As noted by the trial court, there are any number of reasons why a person might purchase real property in the name of another person. Considering only the facts most favorable to the trial court's judgment, we cannot say that Maynor has met the onerous burden of showing that there was no way the trial court could have concluded that he had unclean hands.

Maynor also contests Swages's status as a bona fide purchaser of the Property. Maynor's claim is based on the premise that Linares's power of attorney was fraudulently obtained. But the trial court did not find this to be the case. The trial court noted that Linares assisted Maynor in running his business and that Maynor requested that Linares send him money after he was deported. The power of attorney document states that it was notarized in Guatemala and signed by Celso A. Ramirez. Although Maynor notes that he was in the custody of American immigration authorities at the time the power of attorney was executed, this does not mean that the power of attorney was fraudulently obtained. The trial court could have concluded that Maynor's cousin, Celso A. Ramirez, executed the power of attorney and that this same Celso A. Ramirez was the titled owner of the Property. Because there is evidence supporting the trial court's conclusion that the power of attorney was not fraudulently obtained, Maynor's argument that Linares's sale of the Property to Swages was void ab initio due to a fraudulent power of attorney fails.

## Conclusion

As a party appealing from a negative judgment, Maynor has not met his burden of showing that the evidence points unerringly to a conclusion different than that reached by the trial court. Simply put, the trial court was under no obligation to credit the testimony of Maynor or Ellis that Maynor was the purchaser of the Property. The evidence favoring the trial court's judgment instead shows that the Property was purchased in Celso A. Ramirez's name, and Maynor did not satisfy the trial court that he is Celso A. Ramirez. Rather,

Celso A. Ramirez is Maynor's cousin in Guatemala, and the evidence leads to the inference that Maynor used his cousin's name and later claimed it as his own. Thus, the trial court could also conclude that Maynor came to the court with unclean hands and therefore could not seek the equitable relief of quieting title to the Property. Lastly, the trial court did not err by concluding that Linares's power of attorney was not fraudulent and that the sale of the Property to Swages was not void ab initio. As Maynor's remaining arguments are all premised on his claim that he owns the Property, they necessarily fail. For all of these reasons, we affirm the judgment of the trial court.

Affirmed.

Kirsch, J., and Bailey, J., concur.